**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Bryan Bernard


        v.                                    Civil No. 07-cv-341-JL


New Hampshire Department
of Corrections, et al.


### REPORT AND RECOMMENDATION

        Pro se plaintiff Bryan Bernard brings this action, pursuant
to 42 U.S.C. § 1983, alleging that defendants have abridged his
rights under the First and Fourteenth Amendments to the United
States Constitution (document nos. 1, 3-4 and 6).  Named as
defendants are William L. Wrenn, Commissioner of the New
Hampshire Department of Corrections ("NHDOC") and the following
employees of the New Hampshire State Prison ("NHSP"): James P.
Daly, Chaplain; Christopher Kench, Administrator; and corrections
officers Danny Shaw, Clay LeGault, Kingsbury, Duffin, Strople,
Knieriemen and Mosher.

        The complaint is before me for preliminary review to
determine whether, among other things, it states a claim upon
which relief may be granted.  See 28 U.S.C. § 1915A; U.S.
District Court for the District of New Hampshire Local Rule

("LR") 4.3(d)(2).  For the reasons stated below, I find that
Bernard has alleged the following claims: (1) First Amendment
claims based on the denial of free exercise of religion against
LeGault, Kingsbury, Strople, Mosher, Wrenn, Kench and Shaw; and
(2) First Amendment retaliation claims against Strople,
Knieriemen and Shaw.  I recommend dismissal of all remaining
claims.

<u>Background</u>

Bernard is an inmate at the NHSP and a practicing member of
the Nazarite faith.  He allegedly is required to abstain from
shaving his beard during "religious separation," a period of time
deemed holy under the Nazarite faith.[1]  He explained his
religious beliefs and practices to the defendants and informed
them of his wish to abstain from shaving.  He further explained
that the NHSP shaving policy infringed on his religious
practices.  Although defendants granted Bernard a religious
shaving pass, he allegedly was only permitted to grow his beard
to a length of 1/8 of an inch.

---

[1]Bernard appears to refer to the Nazarite Vow, which forbids
the cutting of hair and beard.  <u>See</u> <u>Smith v. Ozmint</u>, 444 F. Supp.
2d 502, 506 (D.S.C. 2006); <u>Holley v. California Dep't of
Corrections</u>, 2007 WL 586907, slip op. at *3 (E.D. Cal. Feb. 23,
2007).

Bernard now brings this action, alleging that during the course of his incarceration, defendants denied him free exercise of religion, retaliated against him for the exercise of his First Amendment freedoms and denied him due process during the course of disciplinary proceedings arising from his refusal to shave. He further alleges that defendants denied due process by withholding canteen items and interfered with his meaningful access to the courts.  In support of his claims, Bernard alleges a lengthy chronology of events, as follows.

On September 25, 2007, Duffin harassed Bernard regarding his beard length, and Bernard responded by explaining his religious beliefs and practices.  Afterwards, Duffin complained to LeGault that Bernard's beard length exceeded the 1/8-inch shaving pass allowance.  Subsequently, Bernard met with LeGault and explained that during the last four months he abstained from shaving because he was in "religious separation", a period deemed holy under the Nazarite Faith.  Bernard added that he would continue to abstain and that requiring him to shave would infringe on his religious practice known as "Nazarite Separation."  LeGault explained the NHSP shaving policy and informed Bernard that he would be disciplined and sanctioned for noncompliance.  In an

attempt to avoid disciplinary action, Bernard filed inmate request slips on September 26, 2007, requesting LeGault and Shaw to transfer him to the secured housing unit ("SHU") or another facility with a less restrictive shaving policy.  His requests were denied.

On September 26, 2007, Bernard was called to the office of Kingsbury and, in his presence, entered into a discussion with LeGault regarding the NHSP shaving policy and the possibility of being transferred to a unit or facility with a less restrictive shaving policy.  Bernard's request for a transfer was denied.  He was informed that he would not be transferred to the SHU and that pursuant to disciplinary actions he would be upgraded to the Close Custody Unit ("CCU")[2].  Kingsbury told Bernard to shave, and Bernard objected on the basis that it would violate his religious beliefs.  Kingsbury then ordered Bernard to shave and threatened him with disciplinary action for noncompliance.  Bernard responded that he would file a federal lawsuit, and Kingsbury encouraged him to file.[3]  Kingsbury issued a disciplinary report

---

[2]Bernard characterizes the CCU as a violent and dangerous unit that lacks sufficient handicap accommodations and follows the same NHSP shaving policy.

[3]In Vaillancourt v. Campbell, Civil No. 06-cv-438-JD, Bernard filed a petition for injunctive relief, alleging that he

4

against Bernard for failure to follow a direct order.  The
disciplinary report indicates that Bernard's beard length
exceeded the 1/8 inch limit permitted by NHSP policy.

On October 2, 2007, Strople allegedly denied Bernard canteen
items, including stamps, and demanded that he return to his unit
and shave before collecting the items.  Bernard refused on the
basis of his religious beliefs and departed without the items.
Strople allegedly closed his register, followed Bernard outside
the canteen and subjected him to harassment, intimidation, verbal
abuse and threats of disciplinary action for noncompliance with
the NHSP shaving policy.  Mosher allegedly was present and
demanded that Bernard shave in compliance with the NHSP shaving
policy.  Bernard responded that he had no intention of violating
his religious beliefs.  Knieriemen allegedly overheard the above
exchange between Strople and Bernard.  In addition, during
September and October 2007, Knieriemen allegedly denied Bernard
stamps and interfered with his mail.

On October 9, 2007, Duffin again harassed Bernard by

---

had been harassed, disciplined and prevented from practicing his
religion in violation of his First Amendment rights.  On October
5, 2007, this Court denied the petition on the basis that his
First Amendment claims were not related to the underlying
lawsuit.  Bernard was instructed to file a new action in this
Court by separate complaint.

demanding to see his shaving pass and asking whether he was written-up for his beard growth and placed on canteen restriction.  He also accused Bernard of trimming or manicuring his beard.  Duffin then issued Bernard his canteen items.

On that same day, Bernard testified at his disciplinary hearing with regard to the disciplinary report issued by Kingsbury.  The hearing was continued to afford the hearings officer an opportunity to conduct an investigative interview with Daly, the NHSP Chaplain.  At the continuation of the hearing on October 11, 2007, Daly testified but allegedly "omitted testimony pertaining to Nazarite Religious Separation."  Bernard was found guilty and subjected to sanctions.  Later that day, he reduced his beard length in accordance with the hearing officer's request.  On October 12, 2007, Bernard confronted Daly about the alleged omission of testimony, and Daly responded by instructing him to follow the NHSP shaving policy.

On October 12, 2007, Kingsbury again ordered Bernard to shave.  Bernard refused, explaining that he had trimmed his facial hair on October 11, 2007 in accordance with the hearing officer's request.  Kingsbury allegedly approached Bernard within 10 to 12 inches of his face and stated that some of his facial hair exceeded the limit allowed under the NHSP shaving policy.

When Bernard informed Kingsbury that he intended to file a lawsuit, Kingsbury encouraged him to file.

Bernard allegedly filed a complaint with Wrenn with regard to the above infringements on his religious beliefs and practices and the violations arising from the NHSP shaving policy.  In addition, he requested a transfer to a unit or facility with a less restrictive shaving policy.  Acting on behalf of Wrenn, Kench advised Bernard that religious shaving passes are governed by the NHSP policy and denied his request for a transfer. Bernard allegedly filed a second complaint in which he notified Shaw of the infringements on the his religious beliefs and practices.

Nearly six months have elapsed since Bernard first informed defendants of the alleged deprivations, however, to date he has not received an adequate response.  He now brings this civil rights suit, alleging that defendants' actions rise to the level of constitutional violations.

<u>Discussion</u>

I.   <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  <u>See</u> 42 U.S.C. § 1983; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981);

Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  In
order to be held liable for a violation under Section 1983, a
defendant's conduct must have been a cause in fact of the alleged
constitutional deprivation.  See Monell v. Dep't of Soc. Servs.,
436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62
(1st Cir. 1997).  The premise of Bernard's Section 1983 action is
that prison officials subjected him to the following
constitutional deprivations in violation of his rights under the
First and Fourteenth Amendments to the United States
Constitution.

    A.   Denial of Free Exercise of Religion

    Bernard alleges that defendants violated his rights under
the First Amendment's Free Exercise Clause[4], as applied to the
states through the Fourteenth Amendment, by denying him free
exercise of religion.

    It is well-established that convicted prisoners do not
forfeit all constitutional protections by reason of their
incarceration.  See Bell v. Wolfish, 441 U.S. 520, 545 (1979).
"In the First Amendment context . . . a prison inmate retains

---

[4]The relevant provision of the Constitution provides that
"Congress shall make no law respecting an establishment of
religion, or prohibiting the free exercise thereof."  U.S. Const.
Amend. I.

those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974), including the right to free exercise of religion, <u>see</u> <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987) (citing <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972)); <u>accord</u> <u>Moorish Science Temple, Inc. v. Smith</u>, 693 F.2d 987, 990 (2d Cir. 1982) ("[A] prisoner retains those First Amendment guarantees, including the right to participate in practices which are an integral part of his religious faith . . .."). Prisons must provide all inmates reasonable opportunities to exercise their religious freedom. <u>See</u> <u>Cruz</u>, 405 U.S. at 322 n.2.

Free exercise claims brought by prisoners are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." <u>Ford v. McGinnis</u>, 352 F.3d 582, 588 (2d Cir. 2003) (quoting <u>O'Lone</u>, 482 U.S. at 349). <u>See also</u> <u>Shaw v. Murphy</u>, 532 U.S. 223, 227–229 (2001). The Supreme Court has held that a prisoner's sincerely held religious beliefs must yield if contrary to prison regulations that are "reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987); <u>see</u> <u>also</u>, <u>Washington v. Harper</u>, 494 U.S. 210, 224

(1990) (prison restrictions that implicate constitutional rights
are judged by the reasonableness standard); O'Lone, 482 U.S. at
351–352 (the Constitution does not require the prison to
sacrifice legitimate penological objectives to satisfy an
inmate's desire to exercise his religion so long as an inmate is
not deprived of all forms of religious exercise).

Here, Bernard claims that as a practicing member of the
Nazarite faith, he is required to abstain from shaving his beard
during a holy period known as "religious separation."  He
allegedly explained his beliefs to LeGault, Kingsbury, Strople
and Mosher and informed them of the restrictions placed on his
religious practices and his wish to abstain from shaving.  In
addition, he informed the defendants that the NHSP shaving policy
"violate[s] his religious practices of Nazarite Separation."
Through a series of inmate request slips and meetings, Bernard
repeatedly informed the defendants of the infringements on his
religious practices.  Despite Bernard's requests, defendants
ordered him to shave, and/or threatened him with disciplinary
action for refusing to comply with the NHSP shaving policy,
thereby interfering with his free exercise of religion and
observance of the Nazarite faith.

Bernard reasons that because his hair is "nearly waist

length" and not considered a security risk, his beard length similarly should not be considered a security risk.  At this stage of preliminary review, the record is silent as to whether the shaving policy at issue is justified by legitimate penological interests.  Bernard reported the alleged deprivations to Wrenn, Kench and Shaw, however, they failed to remedy the problem or take any correction action.  Nearly six months have elapsed since Bernard first informed defendants of the alleged deprivations but to date he has not received an adequate response.  Accordingly, for purposes of preliminary review, I conclude that Bernard has stated cognizable First Amendment claims against LeGault, Kingsbury, Strople, Mosher, Wrenn, Kench and Shaw.  Because Bernard has failed to allege sufficient predicate facts against Knieriemen and Daly, I recommend that the claims against them be dismissed.

B.   <u>Retaliation</u>

Bernard alleges that Strople and Knieriemen denied him stamps and that Knieriemen interfered with his mail, all in retaliation for his exercise of First Amendment rights.  I liberally construe the complaint to allege that defendants retaliated against Bernard in reprisal for his right to freely exercise his religion and his right to file administrative

grievances and civil actions with regard to his free exercise of religion.

To prevail on a retaliation claim, an inmate must show: (1) conduct which led to the alleged retaliation was constitutionally protected; (2) that he suffered some adverse action at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). As explained previously, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," Pell, 417 U.S. at 822, including the right to free exercise of religion, see O'Lone, 482 U.S. at 348 (citation omitted). Prisoners also have a First Amendment right to petition the government for redress of grievances, and prison officials may not retaliate against prisoners for exercising that right. See Shabazz v. Cole, 69 F. Supp. 2d 177, 197 (D. Mass. 1999). See also Walker v. Thompson, 288 F.3d 1005, 1008–09 (7th Cir. 2002) (holding that inmates are entitled under the First Amendment to file grievances and lawsuits, and officers may not retaliate against them for exercising that right).

Here, Bernard alleges that Strople and Knieriemen retaliated

against him by denying him stamps.  He further alleges that
Knieriemen interfered with his mail and denied him "three
official letters, with a cash slip attached for postage, and
approved by [LeGault]."  According to Bernard, defendants'
actions interfered with his incoming and outgoing mail.  Bernard
further claims that defendants' actions were motivated by his
religious beliefs and by his filing of administrative and legal
proceedings and, therefore, were taken against him in reprisal
for his exercise of First Amendment freedoms.  Bernard reported
the deprivations to Shaw, who allegedly failed to remedy the
problem or take any corrective action.  Accepting Bernard's
allegations as true, which I must do at this preliminary stage of
the proceedings, I conclude that he has stated cognizable
retaliation claims against Strople, Knieriemen, and Shaw.

    C.    <u>Denial of Due Process</u>

        1.    Disciplinary Proceedings

Construed liberally, the complaint alleges that Kingsbury
abridged Bernard's Fourteenth Amendment right to due process by
issuing a disciplinary report without having it first approved by
Shaw[5], and by subjecting Bernard to disciplinary proceedings and

---

[5]Bernard claims that the disciplinary report issued by
Kingsbury failed to follow due process, because "any write-up

sanctions after he refused to shave his beard.  In addition, the complaint broadly alleges that Chaplain Daly abridged Bernard's due process rights by failing to testify about Nazarite Religious Separation at the disciplinary hearing.

The Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  In order to assert a Fourteenth Amendment due process claim, a plaintiff must allege that he was deprived of a liberty interest protected by the Constitution or by state law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Haines v. Kerner, 404 U.S. 519 (1972); Dominique v. Weld, 73 F.3d 1156, 1158 (1st Cir. 1996).

In Wolff, the Supreme Court identified the due process requirements for a disciplinary hearing in a prison.  418 U.S. at 564.  Those requirements include written notice of the charges at least twenty-four hours in advance of the hearing, the ability to call witnesses and present evidence, and that the hearing be presided over by an impartial decisionmaker.  Id. at 566, 570-71; Surprenant v. Rivas, 424 F.3d 5, 16 (1st Cir. 2005).  Where, as here, a prisoner alleges a due process claim arising from the

---

submitted for a hearing must be approved by the major of the facility. . . [t]his process was not properly followed."

imposition of disciplinary sanctions, he must first demonstrate that the sanctions imposed presented "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life" and that he was entitled to due process in order for the sanctions to be constitutionally effected.  Sandin v. Conner, 515 U.S. 472, 483–84 (1995).

In this action, Bernard refused to shave his beard, and Kingsbury charged him with a 39B disciplinary infraction, which is described in the record as "failure to obey any written rule." The record indicates that Bernard received advance notice of the hearing and that he waived the right to call witnesses.  While Daly allegedly failed to testify about Nazarite Religious Separation during the hearing, Bernard does not allege that he was denied the opportunity to cross-examine Daly.

Subsequently, Bernard was found guilty and subjected to sanctions.  The sanctions included a suspension of certain privileges for 90 days, a loss of 20 hours of recreational time and an imposition of 20 hours of extra duty.  There is no indication that the sanctions imposed upon Bernard were so severe that they were not a typical and reasonably foreseen part of prison life.  Nor has Bernard alleged that any of the sanctions imposed significant hardship on him.  Accordingly, I find that

Bernard has not alleged a liberty interest of which he was deprived and, therefore, conclude that he has failed to state a cognizable Fourteenth Amendment due process claim.  I therefore recommend that the due process claims against Kingsbury and Daly be dismissed.

> 2.   Canteen Items

Bernard broadly alleges that Strople denied him various canteen items without due process of law by demanding that he shave before the items would be issued.  The canteen items included stamps, writing materials, cosmetics, hygiene items and health items.

Even assuming that Bernard possesses a property interest sufficient to warrant protection under the Due Process Clause, he fails to state a claim upon which relief may be granted.  "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Watson v. Caton, 984 F.2d 537, 541 (1st Cir. 1993)(holding that there is no legal basis for a Section 1983 action where the allegation is that the action was derivation from, and not a

reflection of, an established state procedure).  Here, the
complaint is void of any allegation that New Hampshire affords no
postdeprivation remedy.  See Romero-Barcelo v. Hernandez-Agosto,
75 F.3d 23, 33 (1st Cir. 1996) (declining to address whether an
adequate postdeprivation remedy is available under state law
absent any allegation by the plaintiff).  I therefore conclude
that Bernard has failed to state a claim under Section 1983 as to
the alleged deprivation of canteen items.  Accordingly, I
recommend that the claim against Strople be dismissed.

     D.   Denial of Meaningful Access to the Courts

     Bernard broadly alleges that Strople denied him postage
stamps and that Knieriemen interfered with and/or withheld mail,
thereby denying him "access to Merrimack County Superior Court,
for a filing fee, via NECU, (see attached E, E-1, E-2)."   I
liberally construe the complaint to allege Fourteenth Amendment
claims arising from the denial of meaningful access to the
courts.

     "There is a fundamental constitutional right of access to
the courts, founded both in the First Amendment guarantee of
[the] right to petition for redress of grievances, and in the due
process clause which assures that no person will be denied the
opportunity to present to the courts their claims concerning

17

violations of fundamental constitutional rights.  <u>McDuffy v.
Koval</u>, 226 F. Supp. 2d 541, 548 (D. Del. 2002)(citations
omitted).  The right of access to the courts is strongest in the
context of constitutional claims and other civil rights actions.
<u>See</u> <u>BreMiller v. Cleveland Psychiatric Inst.</u>, 898 F. Supp. 572,
582 (N.D. Ohio 1995).  To establish a claim for denial of access
to the courts, a plaintiff must show that he was denied access to
the courts and suffered actual injury, such as interference with
his efforts to pursue a claim.  <u>See</u> <u>McDuffy</u>, 226 F. Supp. 2d at
548.

   Accepting Bernard's allegations as true, I conclude that he
has failed to state any relevant actual injury that resulted from
the alleged denial of meaningful access to the courts.  While he
claims that defendants interfered with and withheld his mail and
denied him stamps, he has not alleged any ensuing constitutional
harm.  Nor has he identified any actions by the defendants that
frustrated or impeded a specific legal claim.  While defendants'
actions may have interfered with Bernard's payment of a filing
fee to the superior court, he has not alleged that any legal
claim was actually impeded or thwarted.  Nor has Bernard alleged
that any other legal claims have been impeded; rather, he
concedes that he has filed several civil actions in the state and

18

federal courts, three of which are pending in this Court. Without demonstrating that defendants' actions prevented him from participating meaningfully in the legal process, Bernard fails to allege any constitutional deprivation.  Accordingly, I recommend dismissal of this claim in its entirety.

II.  <u>Official Capacity</u>

Construed liberally, the complaint seeks injunctive and monetary relief for wrongs committed by defendants as state actors in their official capacities.  It is well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under Section 1983.  <u>See</u> <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989)(holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983). Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55.

19

To the extent Bernard brings official capacity claims for monetary relief against the state defendants, all of whom are officials of the NHDOC and NHSP, I recommend that those claims be dismissed.  On the other hand, official capacity actions against state actors for prospective injunctive relief are not treated as actions against the state and may be considered under Section 1983.  See Will, 491 U.S. at 71 n.10.  Thus, Bernard is not barred from bringing claims for prospective injunctive relief against the defendants in their official capacities.

Conclusion

For the reasons stated above, I find that Bernard has alleged the following claims: (1) First Amendment claims based on the denial of free exercise of religion against LeGault, Kingsbury, Strople, Mosher, Wrenn, Kench and Shaw; and (2) First Amendment retaliation claims against Strople, Knieriemen and Shaw.  I recommend dismissal of all remaining claims.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly

20

moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Unauthorized Practice of Law Committee v. Gordon</u>, 979 F.2d 11, 13–14 (1st Cir. 1992); <u>United States v. Valencia–Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date: April 1, 2008

cc:  Bryan Bernard, pro se